Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8641 | **DATE** | 3/19/2001 |
| **CASE TITLE** | MORRIS GUILLORY, et al vs. THE AMERICAN TOBACCO CO., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' motion for class certification is Denied [162-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 0 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 178 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 01 MAR 19 PM 4:03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MORRIS GUILLORY and ARNOLD )
MELAMED, individually and on behalf )
of all others similarly situated, )
)
)
Plaintiffs, ) 97 C 8641
)
) Judge Ronald A. Guzman
v. )
)
THE AMERICAN TOBACCO )
COMPANY, et al., )
)
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(3). For the reasons stated below, the Court denies the motion.

## FACTS

This case is a putative class action brought by named plaintiffs Morris Guillory and Arnold Melamed, longtime cigarette smokers, who seek damages and injunctive relief.[1] Defendants are various tobacco companies as well as their hired public relations firms. Plaintiffs' two count complaint alleges that tobacco products sold by the defendants were dangerous, defective, addictive and that such information about these products was fraudulently

---

[1] The Court accepts the allegations of the plaintiffs' amended complaint as true when determining whether the proposed class should be certified. *See Johns v. DeLeonardis*, 145 F.R.D. 480, 482 (N.D. Ill. 1992).

concealed from consumers. Count I alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and Count II seeks medical monitoring.

Pursuant to Rule 23(b)(3), plaintiffs seek to certify a class on behalf of:

> All Illinois residents who smoke or smoked cigarettes manufactured by Defendants, who started smoking while a minor, who purchase or purchased cigarettes in Illinois and who desire to participate in a program designed to assist them in the cessation of smoking and/or monitor their medical condition to promote early detection of disease caused by, contributed, or exacerbated by cigarette smoking.

(Pls.' Mem. Supp. Class Certification at 26.) On behalf of the proposed class, plaintiffs seek to establish a cessation program and a court supervised medical monitoring program to be funded by defendants, through which class members would undergo periodic diagnostic testing and medical examinations in order to promote the early detection of diseases caused by smoking. On behalf of the class, plaintiffs also seek compensatory and other damages pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 505/1.

Plaintiffs contend that all prerequisites for class certification have been met and that certification is proper under Rule 23(b)(3). Defendant argues that individual issues predominate precluding certification of the class and that a class action lawsuit is not a superior method for adjudicating this dispute.

## DISCUSSION

## I. PREREQUISITES TO CLASS CERTIFICATION

Rule 23 governs class certification determinations. It requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

2

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). All of the elements must be satisfied in order for certification of the class to occur. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)). The moving party has the burden to establish that each of the prerequisites of Rule 23(a) are satisfied. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Valentino v. Howlett*, 528 F.2d 975, 979 (7th Cir. 1976).

Once all of the elements of Rule 23(a) are met, the moving party must also show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611-13 (1997). Plaintiffs in this case seek certification under Rule 23(b)(3), which provides for certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

When determining a motion for class certification, the court does not conduct a "preliminary inquiry into the merits of a suit to determine whether it can be maintained as a class action." *In re VMS Secs. Litigation*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). However, in reaching its decision to certify, the court may consider the substantive elements of the plaintiff's claims and the proof necessary to sustain those claims so as to project the course of a trial on those issues. *Elliott v. ITT Corp.*, 150 F.R.D. 569, 573 (N.D. Ill. 1992). If the party seeking class certification meets its burden showing that the certification requirements are satisfied, the court must certify the proposed class. *Falcon*, 457 U.S. at 161; *Vickers v. Trainor*, 546 F.2d 739, 747

(7th Cir. 1976). The court maintains broad discretion to determine whether a proposed class satisfies the requirements and should err in favor of maintaining class actions. *King v. Kansas City S. Indus.*, 519 F.2d 20, 26 (7th Cir. 1975); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980).

There are two implied prerequisites to class certification that must be satisfied prior to addressing the issues raised by Rule 23(a). First, the class must be sufficiently defined so that the class is identifiable. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). Secondly, the named representatives must fall within the proposed class. *Id.*

A class must be clearly defined so that a Court can determine whether a particular individual is a member of the proposed class. *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999). Whether the description of a class is sufficiently definite to permit ascertainment of the class members must be determined on a case-by-case basis. *Alliance to End Repression*, 565 F.2d at 977. However, the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf. *Clay*, 188 F.R.D. at 490.

In this case, the plaintiffs propose a class defined as:

> All Illinois residents who smoke or smoked cigarettes manufactured by Defendants, who started smoking while a minor, who purchase or purchased cigarettes in Illinois and who desire to participate in a program designed to assist them in the cessation of smoking and/or monitor their medical condition to promote early detection of disease caused by, contributed, or exacerbated by cigarette smoking.

(Pls.' Mem. Supp. Class Certification at 26.) There are several problems with this proposed definition. For one, if the Court were to certify this class as defined, potentially hundreds of plaintiffs would be added daily. Although it is permissible to encompass future members in a

4

definition, the potential for a massive quantity of future members in this class makes it unmanageable. Also, the proposed class does not distinguish between current smokers and former smokers, thus making the exact membership of the class at any given time during the case impossible to ascertain. Furthermore, the plaintiffs propose a class of individuals who "desire to" participate in a medical monitoring and/or smoking cessation program. In this way, the class definition depends on a subjective criteria and improperly relies upon the subjective desires of individual class members. *See Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) (holding a class defined in relation to each individual's state of mind is not sufficiently definite). It is next to impossible for this Court to come up with a class in this case that would be sufficiently definite given the factors present in this case. Nevertheless, even if a sufficiently precise definition could be created by the Court, such efforts would be futile because plaintiffs have failed to meet the requirements of Rule 23.

### A. Numerosity

The proposed class must be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). The complaint need not allege the exact number or identity of class members. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988). When the proposed class is estimated to be large, numbers alone may be indicative of numerosity. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). In addition to estimating the size of the class, the court considers judicial economy and the ability of class members to institute individual suits. *Tenants Associated for a Better Spaulding v. United States Dep't of Housing & Urban Dev.*, 97 F.R.D. 726, 729 (N.D. Ill. 1983). Plaintiff asserts that the class defined in their complaint, which

is comprised of potentially millions of people, is sufficiently large to render joinder of all class members impracticable. According to various studies provided by the plaintiffs' experts, about 3,000,000 Illinois residents smoke. Countless others are former smokers who would also potentially be eligible for relief. Given these enormous figures, it is clear the numerosity requirement is satisfied.

### B. Commonality

A named class representative may sue on behalf of the class only if there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). The commonality requirement in Rule (a)(2) "is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) (stating the Third Circuit's interpretation of the commonality requirement in *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 625 (1996)). Since plaintiffs seek to certify the class action under Rule 23(b)(3), there is no reason to analyze commonality separately. Commonality is discussed in detail with the requirements of Rule 23(b)(3) in Section II.

### C. Typicality

Rule 23(a)(3) requires the court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other

6

class members and his or her claims are based on the same legal theory." *Id.* Unlike the commonality requirement, the typicality inquiry focuses on the relationship between the representatives and the class as a whole. *Id.* Factual distinctions between the claims of the named plaintiffs and those of other class members will not defeat a finding of typicality. *Id.* Moreover, "similarity of legal theory may control even in the face of differences of fact." *Id.* Therefore, the consequence of a finding of typicality is that the named plaintiff's interests are aligned with the proposed class, and thus in pursuing their own claims, the named plaintiffs will also advance the interest of the class. *See In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

Plaintiffs contend that their claims are typical of the class's claims because all arise from defendants' common conduct. Plaintiffs assert that the common conduct consisted of defendants' acts of engaging in a conspiracy to manipulate the nicotine content in cigarettes and conceal and suppress information regarding the addictive properties of nicotine. (Pls.' Mem. Supp. Class Certification at 37-38.) Additionally, plaintiffs claim that typicality exists because all of the claims are based on the same remedial theory.

Defendants, on the other hand, claim that the named plaintiffs' claims do not satisfy the typicality requirement because no plaintiff or group of plaintiffs can be typical of the named proposed class. (Defs.' Mem. Opp'n to Class Certification at 41-42). Defendants argue that the substantial differences between the members of the putative class–most significantly in the areas of levels of exposure to nicotine and causation–make it impossible for any set of class representatives to be typical of the class as a whole. Specifically, the defendants rely on *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999), to demonstrate that the typicality

7

requirement has limitations, "particularly when the claimed injury is tied to a complex course of conduct engaged in by the defendants over a long period of time, as opposed to a single act to which all class members have been exposed equally." *Id.* (citing *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998)).

In *Clay*, the plaintiffs brought a civil action for declaratory and monetary relief on behalf of a proposed class of nationwide smokers who alleged that they bought and smoked the defendant's cigarettes when they were minors due to the company's advertising and promotional campaigns specifically targeting young adults. *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 485 (S.D. Ill. 1999). The court found that the typicality requirement was not satisfied because the claims of the class representatives were not typical of one another or of the entire proposed class. The court reasoned that the plaintiff's case depended on proving that each class member was exposed to relatively the same amounts of tobacco propaganda and that the effect of this propaganda on each class member's decision to smoke was significantly equal. *Id.* at 492. However, to the extent that the advertising did reach the class members, the court noted that "it arrived through different mediums and with greatly varying degrees of success," and thus did not affect class members equally. *Id.*

Similarly in this case, the plaintiff's claims are not consistent among each other and are not sufficiently typical of the class to support class certification. Plaintiff argues that even if differences exist between the plaintiffs factually, a finding of typicality will not be precluded where there is a strong similarity of the legal theories. *See De La Fuente*, 713 F.2d at 232. However, the differences among the plaintiffs and the proposed class members are not merely factual differences regarding the circumstances of how their claims initiated–they impact the

8

very legal theories on which the class can proceed. For example, the plaintiffs allege they were involuntarily exposed to the harmful substances contained in cigarettes because the defendants deliberately concealed information regarding the health hazards associated with smoking and the addictive properties in nicotine, particularly within their advertising campaigns. In order to prove each of their claims, the plaintiff must demonstrate a causal connection between the alleged misconduct and the damages–namely that the defendants' deceptive advertising caused each class member to smoke. On a classwide basis, this will be impossible to prove. That is because it is likely that not all members of the class were similarly subject to equal amounts of tobacco propaganda as a minor. The extent of their exposure, if at all, was likely different as was the method by which the advertising arrived at each class member. Additionally, it is not sufficient for the plaintiffs to argue that the defendants' advertising campaigns had the same effect on every class member. The fact is individuals begin smoking for myriad of reasons and the influence of advertising on an individual may be just one of those many reasons. While many class members may indeed have been enticed as minors by the tobacco industry's marketing strategies, just how much will undoubtedly vary between individual plaintiffs. Given, given the great variations between the class members' claims, typicality does not exist.

### D. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To be an adequate class representative, a named plaintiff must: (1) not have claims which are antagonistic to or conflict with those of the other class members; (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have

9

competent and experienced attorneys that are generally able to conduct the litigation vigorously. *Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

Plaintiffs will adequately protect the interests of the class as their interests in obtaining relief are in alignment with those of absent class members. They do not appear to have any interests which are adverse to other members of the classes. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."). Additionally, plaintiffs' counsel appear qualified and have demonstrated prior experience in various types of class actions and consumer litigation. Accordingly, plaintiffs satisfy the adequacy of representation requirement.

## II. COMMONALITY AND THE REQUIREMENTS OF RULE 23(B)(3)

While having failed the typicality prerequisite of Rule 23(a), this Court must consider commonality and the requirements of Rule 23(b)(3). Rule 23(b)(3) requires a showing that "questions of law or fact common to the members of the class predominate and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

### A. Predominance

In order to satisfy the requirement of predominance, the plaintiff must show that the common issues not only exist, but outweigh the individual questions. *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529 (N.D. Ill. 1998). The common questions must be central to all

10

claims for which relief is sought. *Id.* In evaluating a motion to certify, it is not proper to consider the merits of a suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). However, a court may look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). A court must "understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of certification issues." *Id.*

Plaintiffs identify the following common factual and legal issues in support of certification: 1) whether the nicotine contained in cigarettes is addictive; 2) whether defendants engaged in deceptive and fraudulent course of conduct concerning the health hazards of smoking and addictive characteristics of nicotine; 3) whether defendants deliberately exposed smokers to known hazardous substances; and 4) whether medical monitoring is an appropriate course of action under Illinois law if plaintiffs prove defendants did engage in a deceptive and fraudulent course of conduct. (Pls.' Mem. Supp. Class Certification at 35). Additionally, plaintiffs assert that evidence will demonstrate that: nicotine is addictive; that the defendants knew or should have known that nicotine was addictive; that the defendants denied that nicotine was addictive while knowing that it was; and that the levels of nicotine in cigarettes were manipulated in an attempt to cause addiction by the defendants.

Plaintiffs argue that these are sufficient common issues to justify certification, and that the predominance factor is satisfied because no material variation among the class claims exists. The common issues enumerated in this case all relate to defendants' allegedly deceptive conduct and whether medical monitoring and cessation programs are appropriate remedies to provide to plaintiffs. However, plaintiffs fail to acknowledge that both claims raise a number of individual

11

issues inherent in proving the elements of each cause of action in this case. After reviewing the common issues in relation to the numerous individual issues, the Court concludes that the predominance factor is not satisfied.

### 1. Medical Monitoring Claims Require an Analysis of Individual Issues

It should be noted from the outset that it is far from clear whether Illinois recognizes medical monitoring[2] as an independent cause of action. *See, e.g., Carey v. Kerr-McGee Chem. LLC*, No. 96 C 8583, 1999 WL 966484, at *1 (N.D. Ill. Sept. 30, 1999) ("[n]either the U.S. Court of Appeals for the Seventh Circuit nor any Illinois reviewing court has decided" whether Illinois would recognize a cause of action for medical monitoring absent present physical injury); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill. App. 3d 707, 711, 610 N.E.2d 745, 751 (4th Dist. 1993) (court's disposition of case "should not be construed as recognizing a cause of action to recover expenses for medical monitoring without a current physical injury being present"). The elements a plaintiff must prove to establish a right to medical monitoring differ among the states.[3] However, in order to prevail on a theory of medical monitoring based on their theory of

---

[2]A claim for medical monitoring lies when a plaintiff seeks compensation for a toxic exposure that has not yet produced any physical manifestation of injury or disease. *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 523 (N.D. Ill. 1998). Although the viability of a cause of action for medical monitoring has not yet been addressed in many jurisdictions, including this one, courts that have recognized the claim have concluded that a plaintiff may recover the cost of diagnostic medical evaluation proved to be proximately caused by the defendant's wrongdoing. *See, e.g., In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir. 1990); *see also Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1114 (N.D. Ill. 1998).

[3]Most states which recognize medical monitoring claims require the elements as set forth by the Supreme Court of Pennsylvania. Under this formulation, plaintiffs must prove: (1)

12

negligence, plaintiffs must demonstrate that defendants caused their exposure to tobacco. *See Redland Soccer v. Dep't of Army*, 696 A.2d 137, 145-46 (Pa. 1997). In doing so, plaintiffs must show that defendants' actions caused plaintiffs to become addicted to cigarettes and thereby rendered their choice to smoke involuntary. *See, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998).

Plaintiffs contend addiction is not an issue in this case. They argue that defendants' knowledge and intentional misuse and manipulation of the addictive properties of nicotine demonstrate their intentional misconduct and liability for designing and promoting a defective product. Plaintiffs argue that proof of addiction or dependence is not a prerequisite to class membership in this case and that addiction is not a determinant of any claim in their case. In the same breath, however, plaintiffs also contend that the addictive nature of nicotine is the predominating issue surrounding the defendants' deceit thus forming the basis of their two claims.

In the Court's view, addiction of any particular smoker in this class is an essential part of the plaintiffs' claims. Indeed, plaintiffs' own Amended Class Action Complaint establishes that when it alleges "[p]laintiffs and class members have been significantly exposed to proven hazardous substances through intentional or negligent actions of the Defendants, and/or through

---

exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Redland Soccer Club, Inc. v. Dep't of Army*, 696 A.2d 137, 145-46 (Pa. 1997).

13

defective products for which Defendants are strictly liable" and that "[a]s a result of this exposure, Plaintiffs and class members suffer significantly increased risks of contracting serious latent diseases." (Am. Compl. ¶ 24). The language of the complaint indicates that plaintiffs are focused on proving that their addiction created their injury. However, determining addiction requires making numerous individual inquiries about each class member, which is not appropriate for class treatment. *Dhamer*, 183 F.R.D. at 531. To determine whether someone is addicted, a court must first "examine both biological and psychological evidence." *Id.* As such, because proof of addiction requires these individual inquiries, class certification is improper.

## 2. Causation Issues Prevent a Finding of Predominance

Individual causation issues also prevent a finding that common issues predominate. To demonstrate a violation of the Illinois Consumer Fraud Act,[4] plaintiffs must show that a deceptive act or misrepresentation proximately caused plaintiff's injury. *See* ILL. COMP. STAT. 505/10a(a) ("Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person.") In order to evaluate causation under the statute, plaintiffs must demonstrate individual proof of knowledge of the deceptive acts. Thus, each claimant must come forward with evidence that he/she was aware of the defendants' purported misstatements. This showing requires an individual analysis of the extent of exposure to the defendants' marketing and advertising campaigns and the extent to

---

[4]The Illinois Consumer Fraud Act, 815 ILL. COMP. STAT. 505, a plaintiff must show that: (1) the defendants engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce.

14

which this exposure played a role in the plaintiffs' respective decisions to smoke. Without determining what each plaintiff heard or saw, it is impossible to assign liability under the Act. It is these highly individualistic factual determinations associated with the issue of knowledge of misrepresentations that preclude certification. *See Williams v. Ford Motor Co.*, 192 F.R.D. 580, 585 (N.D. Ill. 2000) (refusing to certify an Illinois Consumer Fraud Act class action and noting that "[i]ndividual issues of causation, like issues of reliance and damages, often plague class actions brought under the Illinois Consumer Fraud Act.") (citing *Johnson v. Aronson Furniture Co.*, No. 96 C 117, 1998 WL 641342, at *7 (N.D. Ill. Sept. 11, 1998)); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 372 (N.D. Ill. 1998) (refusing to certify a proposed class because each plaintiff had to show that the allegedly deceptive acts caused the injuries and such an inquiry would raise "innumerable individual questions.")

In this case, the need for individual proof of knowledge to establish causation makes certification improper. This is because it is highly likely that the knowledge among the class members regarding defendants' statements concerning the effects of nicotine differs. Some plaintiffs may have been bombarded by tobacco propaganda while others may have never seen a cigarette ad or paid little or no attention to such ads. Additionally, each member's reliance on those purported misstatements varies. Each class member began smoking for different reasons. Some may have been influenced by peer pressured individual interests. Even if they began smoking due to deceptive advertising, more than likely not all of the members were subject to the same advertising, were exposed to it for the same amount of time, and were influenced by it in the same manner. Differences in the amount of exposure and injury lead to "disparate

15

applications of legal rules," such as causation. *Arch v. American Tobacco Co. Inc.*, 175 F.R.D. 469, 486 (E.D. Pa. 1997).

### 3. Affirmative Defenses Raise Individual Questions

Defendants argue that the defenses of assumption of risk, contributory negligence, and the statute of limitations raise issues uncommon to the class. (Defs.' Mem. Opp'n to Class Certification at 33.) Although the defenses raised strike at the merits of the plaintiffs' claims, a brief analysis is warranted in order to properly decide the certification issue.

Illinois law permits defendants to raise an assumption of risk defense to claims that are based upon negligence. Illinois uses a subjective test for assumption of risk, allowing the jury to consider an individual plaintiff's "knowledge, experience, and background in determining whether he assumed the risk of using a product known to him to be dangerous." *Boland v. Kawasaki Motors Mfg. Corp., USA*, 309 Ill. App. 3d 645, 653, 722 N.E.2d 1234, 1240 (4th Dist. 2000). This requires an examination as to what each and every plaintiff subjectively was aware of with regard to the risk and/or danger. *Barnes*, 161 F.3d at 137. It is impossible to determine such facts without mandating an individual inquiry into the specifics of each plaintiff's circumstances. Indeed, if defendants were not able to individually probe into the peculiarities of each class member's case, the result would be that they would be denied the opportunity to prepare a defense.

Similarly, the statute of limitations defense creates individual issues that prevent the common issues from predominating. If the defense is raised, the court will be required to determine when every class member's addiction became "reasonably ascertainable." *Emig v.*

*American Tobacco Co., Inc.*, 184 F.R.D. 379, 391 (D. Kan. 1998). Again, such a determination involves an inquiry into the specifics of each plaintiff's circumstances, in essence requiring hundreds of mini-trials. As such, this fact intensive analysis makes a class action suit an inappropriate method for adjudicating these claims. *See, e.g., Barnes*, 176 F.R.D. at 502 (noting that the determination of whether affirmative defenses apply to each plaintiff in a class action suit involves a "staggering" number of individual issues).

**B. Superiority**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" before certification is proper. The rule lists four factors to be considered in determining whether a class action suit is superior including: a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and d) the difficulties likely to be encountered in the management of a class action. A court may also consider whether a large number of individual issues will be present in the proposed class action, and if so, superiority is less likely to be established. *Castano*, 84 F.3d at 745 n.19.

In this case, the proposed class action is unmanageable. As previously discussed, the plaintiffs' claims, the elements of proof to establish those claims, and affirmatives defenses available each require analysis of numerous individual issues. It is impossible to comprehend how a court could supervise such numerous inquiries. Additionally, with such a broad class

definition, the enormity of the class would prevent judicial economy. Beyond the suit being unmanageable, the members of the proposed class would also have an interest in making individual decisions. First, the proposed class includes current and former smokers. However, these two groups do not share similar interests in litigation thus affecting the different tactical decisions made with regard to the case. Also, under the class definition, class members have different health conditions with varying degrees of severity. Because of those variances, their motivations are more individually focused, thus making a class action an inadequate method for resolving their claims against tobacco companies. For those reasons, it is clear that the class action is not the superior method for the adjudication of this case.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for class certification is DENIED. [Docket No. 162-1]

**SO ORDERED**

ENTERED: 3/19/07

*[signature]*

**HON. RONALD A. GUZMAN**
**United States Judge**